PECK, STOW & WILCOX CO. v. FRAY et al.

(Circuit Court, D. Connecticut. July 22, 1898.)

1. PATENTS—PRELIMINARY INJUNCTION.
   Where a patent had been in active life for 14 years, and large numbers of the patented article had been made and sold under it, without any question of its validity, *held*, that a preliminary injunction would be granted against an infringer.

2. SAME—PAWL AND RATCHET.
   The Ellrich patent, No. 293,957, for an improved pawl and ratchet, *held* valid and infringed, on motion for preliminary injunction.

Wm. Edgar Simonds, for complainant.
A. M. Wooster, for defendants.

SHIPMAN, Circuit Judge. This is a motion for an injunction pendente lite to restrain the infringement by the defendants of claims 2 and 3 of letters patent No. 293,957, dated February 19, 1894, to Robert E. Ellrich, for an improved pawl and ratchet.

The invention is described in the specification as follows:

"My invention relates to improvements in ratchets having two pawls; and it consists in the construction of the pawls, and the means for operating them hereinafter set forth, and more particularly pointed out in the claims. Each of the pawls has three flat faces, one of which comes against the ratchet; and a flat bar operates on one of the other faces to hold the pawl against the ratchet, and on the other to hold the pawl away from the ratchet. The bar operates on both pawls, and a spring holds the bar against them. The ratchet teeth have bearing surfaces on both sides for the pawls to operate against. When one of the pawls engages the ratchet, motion is allowed in one direction; and when it is raised, and the other pawl engages the ratchet, motion is allowed in the opposite direction. When both pawls engage the ratchet, motion is allowed in neither direction."

The bar bears against the pawls at all times; and, when a pawl is engaged with the ratchet, the bar will bear upon one of its faces, and hold a face against the ratchet; but, when the pawl is thrown up and disengaged from the ratchet, the bar will bear upon another face, and hold the pawl away from the ratchet. "Both pawls operate in the same manner, and when the bar, D, is holding one in engagement, it serves to hold the other out, or vice versa, or it may hold both pawls in or out of engagement at the same time." The patentee also said in the specification: "The device for operating the pawls may be somewhat varied without departing from the spirit of my invention, as, for example, two springs may be used in place of one spring and the bar."

Claim 1 describes the invention too broadly.

Claims 2 and 3 are as follows:

"(2) The combination, with the ratchet, and either pawl having a means for engaging the ratchet and two flat faces, of a bar, as D, adapted to bear

upon one of the faces to hold the pawl against the ratchet, and upon the other face to hold it away from the ratchet, as set forth.

"(3) The combination of a ratchet wheel, B, having teeth, b, both sides of which are adapted to be engaged by the pawls, with two pawls, each of which has two flat faces, and means for throwing them into or out of engagement with the ratchet, separately or together, and a bar, D, having a spring, d, behind it, for holding the pawls in any position in which they are placed, by bearing on one or the other of the flat faces, as herein set forth."

No litigation or adjudication has ever been had upon this patent. It has been in active life for 14 years; and from March 3, 1891, when the complainant and present owner became a licensee, to February 1, 1898, the complainant sold 116,632 bit braces made under it; and its validity, until the acts of the defendant, was acquiesced in or conceded by the trade and the public. The defendants recently began to make and to sell, but not to a large extent, a bit brace which has two elements, viz. the ratchet and pawls, as described in claims 2 and 3, and instead of the bar and spring has a long spring shaped like an inverted U, the resilient sides or arms of which bear against the pawls. The defenses against the motion are that this brace does not infringe the two claims of the Ellrich patent, if the means by which the pawls are to be thrown into or out of engagement with the ratchet are limited to the described means, but, if the means are not thus limited, that the patent is invalid by reason of its close relation to the prior art. Pawls and ratchets have long been used as a part of small hand tools like bit braces, so that, by a change of the engagement of a pawl with the ratchet teeth, the shaft which carries the tool chuck can be rotated in a different, or perhaps opposite, direction from the one in which it was previously moving. Ten forms which antedate the Ellrich patent are shown in the defendants' affidavits. The new thing which

88 F.—50

Ellrich did, and which is described in claim 3 more perfectly than elsewhere, was to combine a single ratchet wheel having two-faced teeth with two pawls which could engage separately or simultaneously with the single wheel. The pawls must have flat faces, and the described means of engagement must be a flat-faced bar, and a spring or their equivalent, acting automatically. Inasmuch as he has a single ratchet wheel, he departed from the ratchet hand drill shown in the patent to I. N. and R. N. Cherry, No. 240,575, dated April 26, 1881, which has two ratchet wheels side by side and a pawl for each. This device had the defendants' U-shaped spring, by which pawls and ratchet were made to engage with each other. If the substitution of a single ratchet with the two-faced teeth for a double ratchet wheel was an inventive act,—and there is thus far in the case, in view of the history of the patented device, no adequate reason upon which to base an adverse conclusion,—claims 2 and 3 contain a patentable invention. Consolidated Brake Shoe Co. v. Detroit Steel & Spring Co., 47 Fed. 894.

The defendants' device is that of the Ellrich specification with the long spring of Cherry in the form of an inverted U, instead of the bar and spring of Ellrich. The U spring is a combined bar and spring. By reason of the curvature, the arms of the bar have a constant resilient action, or the action of a spring. It is such a variation of the bar, D, and its spring, as to be within the terms of the specification and of claims 2 and 3. The motion for an injunction, pendente lite, against the infringement of those claims, is granted.